UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Greensboro Division

| | | |
|---|---|---|
| JOI WILLIAMS and FLOYD WILLIAMS, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| REMINGTON ARMS COMPANY, LLC, | ) | Civil Action No. 1:14-cv-1084 |
| | ) | |
| Defendant. | ) | |

Plaintiffs Joi Williams and Floyd Williams, by and through undersigned counsel, sue Defendant Remington Arms Company, LLC ("Remington" or "Defendant"), and allege as follows:

**INTRODUCTION**

1. This is an action for a severe and catastrophic personal injury suffered by Plaintiff Joi Williams when, on December 28, 2013, a Remington Model 700, 270 caliber bolt-action rifle accidentally discharged, causing her permanent injury and disfigurement. This also is an action for derivative personal injury and economic loss suffered by Plaintiff Floyd Williams.

2. As alleged, *infra*, Plaintiffs assert herein claims for products liability and violation of the Magnuson-Moss Consumer Products Liability Act, arising from Defendant's design, manufacture, marketing, advertisement, and sale of the Remington rifle.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) because (1) the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and (b) there is complete diversity of citizenship among the parties.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because unlawful acts and omissions are alleged to have been committed in this district, Defendant conducts business in this district, and Defendant resides in this district.

**PARTIES**

5. Plaintiff Floyd Williams is a natural person, and purchased a new Remington Model 700 Rifle in the year 2010 from Wal-Mart Stores in Batesville, Arkansas. Mr. Williams resides in the State of Louisiana.

6. Plaintiff Joi Williams is a natural person, and the wife of Floyd Williams. Mrs. Williams resides with her husband in the State of Louisiana.

7. Defendant Remington Arms Company, LLC, is a Delaware corporation, with its headquarters and principal place of business in Madison, Rockingham County, North Carolina.

**FACTUAL ALLEGATIONS**

8. At all times relevant herein, Remington and/or its predecessor(s) in interest was and is engaged in the business of designing, manufacturing, distributing, and selling firearms, including the Remington Model 700 bolt-action rifle (generally referred to as the "Model 700 Rifle").

9. In or around 2010, Plaintiff Floyd Williams purchased a new Model 700 Rifle bearing serial number G6745867 (hereinafter the "Williams Rifle"), based on representations from Remington that the Model 700 Rifle was the most superior hunting rifle on the market.

10. Mr. Williams, an avid hunter and licensed gun owner, had prior experience with firearms. He learned how to, and in fact did, responsibly use, clean, and otherwise maintain the Williams Rifle.

11. In or about December 2013, Mr. Williams went on a hunting excursion wherein

he transported the Williams Rifle for use during the trip. Mr. Williams transported the rifle in the rear of his 2007 Chevrolet Tahoe sports utility vehicle. During transport, the Williams Rifle was located on the floor in the rear of the vehicle, with the safety properly engaged.

12. On December 28, 2013, Plaintiffs were travelling in their Chevrolet Tahoe, along with their two minor children. The family was traveling southbound on Causeway Boulevard in Metairie, Louisiana, and headed to their home in Sorrento, Louisiana. Mr. Williams was driving the vehicle, Mrs. Williams was in the front passenger seat, and the two minor children were seated in the middle row. The third row of the vehicle had been removed.

13. During the course of travel, the Plaintiffs' two-year-old daughter began to cry. In an effort to comfort her crying child, Mrs. Williams attempted to move into the middle row passenger seat to tend to her daughter, who was fastened in her car seat. At that time, Mrs. Williams observed the muzzle of the Williams Rifle on the floor of the vehicle.

14. In an abundance of caution, Mrs. Williams attempted to move the rifle further to the back of the vehicle, and in so doing, exercised great care in handling the rifle and ensuring that she did not touch the trigger.

15. Notwithstanding the care Mrs. Williams exercised in touching only the barrel and underneath the scope of the rifle, the Williams Rifle accidentally discharged as she delicately moved it. At no point did Mrs. Williams or anyone else touch the trigger of the rifle.

16. As a result of the accidental discharge, Mrs. Williams was shot at close range and severely wounded. Mrs. Williams was wounded in the left leg, losing a significant amount of body tissue and muscles in her calf and inner thigh.

17. At the time the Williams Rifle left the care and control of the Defendant, Remington knew and/or should have known of the defective design of the trigger of the Model

700 Rifle and, specifically, the Williams Rifle.

18. From 1948 through April 2006, Model 700 Rifles featured the patented Walker Fire Control mechanism, which was introduced in 1948, and is found in excess of 5,000,000 Remington brand firearms.

19. During the years 1948 to 2006, Remington knew that the Walker Fire Control mechanism was dangerously defective based upon its design, and that consequently, Model 700 Rifles were dangerously defective.

20. As a result of the Model 700 Rifle's defective design, many of those rifles have discharged accidentally and without a trigger pull when jarred or bumped.

21. Defendant's knowledge of devastating design flaws associated with the Walker Fire Control trigger mechanism dates back to before the mechanism was ever placed into the stream of commerce.

22. Over a sixty-year period, thousands of consumers of the Model 700 Rifle have reported to Defendant specific incidents of the accidental discharge of their firearms.

23. Despite years of knowledge related to the various dangerous conditions of the Model 700 Rifle, and prior to Plaintiffs' injuries, Defendant never issued an adequate warning or recall of the Model 700 Rifle, and Remington continued to falsely represent to the public that the Model 700 was a trusted, safe, and reliable rifle.

24. Beginning in May 2006, Remington began to manufacture the Model 700 Rifle with a new and/or modified trigger mechanism known as the X-Mark Pro. The X-Mark Pro trigger mechanism does not utilize the trigger connector component that is unique to the Walker Fire Control mechanism.

25. Remington has continued to utilize the Walker Fire Control trigger assembly in

some rifles after the design of the X-Mark Pro was released to the public in 2006, despite a 2002 agreement with the family of an accidental shooting victim to discontinue the production of the Walker Fire Control trigger after the release of the X-Mark Pro.

26. Before Plaintiffs' injuries, Remington learned that the then-existing X-Mark Pro assembly process created the potential for the application of an excess amount of bonding agent, which could cause Model 700 bolt-action rifles containing X-Mark Pro trigger mechanisms to discharge without a trigger pull. Upon information and belief, Remington knew or should have known of this problem and defect when it sold the Williams Rifle to Plaintiffs.

27. On April 11, 2014, three and one half months after Plaintiff's injury, Remington undertook a voluntary recall of all Model 700 Rifles manufactured from May 1, 2006 to April 9, 2014. In so doing, Remington instituted a specialty cleaning, inspection, and testing process for affected firearms, and also provided recall participants the option to receive a replacement trigger or have their trigger specialty cleaned.

28. Additionally, as part of the recall that commenced in April 2014, Remington changed and improved its assembly processes with regard to the X-Mark Pro trigger mechanism so that the excess bonding agent issue cannot occur again. In this regard, either a reasonable alternative design for the original X-Mark Pro trigger mechanism exists and existed when Defendant manufactured the Williams Rifle and/or Model 700 Rifles, including the Williams Rifle, outfitted with the original X-Mark Pro trigger mechanism, or were unreasonably dangerous in construction or composition when those rifles left Remington's control because they failed to meet Remington's performance standards.

29. For Mr. and Mrs. Williams, Remington's recall efforts were too late, and did nothing to prevent the catastrophic injury suffered by Mrs. Williams on December 28, 2013.

30. By the time Mrs. Williams suffered her severe injury and permanent disfigurement, Remington knew or should have known that the Williams Rifle was defective and warranted immediate recall, warnings, and repair.

**CLAIMS FOR RELIEF**
**Count I: Products Liability – Unreasonably Dangerous Product**

31. Plaintiffs re-allege the allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

32. Plaintiffs were injured in the course of transporting the Williams Rifle in their vehicle. Transporting a firearm in a vehicle is a reasonably anticipated use of such a product, and Plaintiffs' damages arose from such a reasonably anticipated use.

33. Defendant Remington is the manufacturer of the Williams Rifle.

34. Plaintiff Joi Williams was injured by the accidental discharge of the Williams Rifle. Her injuries include, but are not limited to, severe personal injury and permanent disfigurement of her left leg, severe pain and suffering, emotional distress, past and future medical bills, and lost wages and earnings.

35. Plaintiff Floyd Williams was injured by the accidental discharge of the Williams Rifle. His injuries include loss of consortium, emotional distress, and diminution in value of the Williams Rifle because it is defective.

36. Plaintiffs injuries were proximately caused by the unreasonably dangerous nature of the Williams Rifle, particularly its capacity to accidentally discharge without pulling the trigger.

37. The Williams Rifle was and is unreasonably dangerous in that it:

    a. Was unreasonably dangerous in construction or composition when it left Remington's control because it deviated in a material way from

        Remington's performance standards in that the assembly process created the potential for the application of an excess amount of bonding agent, which could cause Model 700 bolt-action rifles containing X-Mark Pro trigger mechanisms to discharge without a trigger pull;

    b.    Was unreasonably dangerous in design when it left Remington's control because there existed an alternative design for the Model 700 Rifle that was capable of preventing Plaintiffs' damage and the likelihood that the Model 700 Rifle's design would cause Plaintiffs' injuries outweighed the burden on Remington of adopting such design; further, such alternative design had no adverse effect on the utility of the Model 700 Rifle;

    c.    The Model 700 Rifle was unreasonably dangerous because Remington did not provide an adequate warning, warning consumers of the possibility that it could discharge accidentally without anyone pulling or otherwise touching the trigger;

    d.    The Model 700 Rifle does not conform to Remington's express warranty that the rifle is free from defects in material and workmanship. Specifically, Remington's warranty is untrue in that the trigger of the Model 700 Rifle is defective and results in the rifle firing without the trigger being pulled, thus being the proximate cause of Plaintiffs' injuries.

38. The Williams Rifle that was manufactured, designed, warranted, advertised, and sold by Defendants was defective and unreasonably dangerous in each of the foregoing ways, thus Defendant is liable to Plaintiffs.

## Count II: Violation of Magnuson-Moss Act

39. Plaintiffs re-allege the allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

40. The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C §2301, et seq. ("MMCPWA" or the "Act"), provides a private right of action to purchasers of consumer products against retailers who, inter alia, fail to comply with the terms of a written warranty, express warranty and/or implied warranty.

41. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

42. The Williams Rifle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

43. Defendant is a "warrantor" as defined in 15 U.S.C. § 2301(5).

44. Defendant provided Plaintiff with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

45. These written warranties include Defendant's warranty to the original purchaser of a new firearm that "your Remington firearm will be free from defect in material and workmanship." In the event of a defect, the Defendant agrees to "repair the defect(s), or replace the firearm at no cost to you."

46. The defective trigger on the Model 700 rifle and in particular the Williams Rifle was covered under the Defendant's warranty.

47. Defendant failed to remedy the defects of the Williams Rifle prior to the injury sustained by Plaintiff Joi Williams, despite knowledge of its dangerous condition and propensity to discharge without the trigger being pulled.

48. Defendant's failure to comply with the terms of its written, express, and implied warranty for the Williams Rifle, by failing remedy the trigger defect, resulted in a violation of the MMCPWA.

49. Plaintiffs suffered damages as a direct and proximate result of Defendant's breach of warranty, thus Plaintiffs demand judgment against Defendant Remington.

50. Defendant is estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment, which include Defendant's intentional concealment from Plaintiffs and the general public that its product was defective, while continually marketing the firearm as a safe, durable, and suitable product.

51. Defendant Remington has made media statements regarding the safety of the

Model 700 rife. In fact in 2010, Remington issued a written statement to CNBC in connection with a documentary that aired in October of that year that the Model 700 was "free of any defect since it was first produced" and that the rifle has been proven to be a "safe, trusted, and reliable rifle."

52. Mr. Williams became aware of Remington's statement, which aired on CNBC after his purchase of the Williams Rifle, and detrimentally relied on Remington's public statements regarding the safety of the Model 700 Rifle when he continued to own and use the Williams Rifle.

53. Given Defendant's failure to disclose to the public information about the defective nature of the Model 700 Rifle, in conjunction with affirmative misrepresentations regarding the same, Plaintiffs could not reasonably have known that the firearm was defective.

54. Defendant maintained exclusive control over information regarding the defective characteristics of the Model 700 rifle, however, fraudulently concealed said information from the public. As such, Defendant is estopped from relying on any statutes of limitations or repose that might otherwise be applicable to claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter judgment in their favor and against Defendant Remington;

b. Award Plaintiffs compensatory, exemplary, and/or punitive damages for their pain and suffering, permanent disfigurement, past and future medical bills, lost earnings, emotional distress, loss of consortium, diminution in value of the defective product, and such other damages as the Court may award;

c. Award the attorneys fees and costs of this action;

d. Enter such other and further relief that is just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs Joi Williams and Floyd Williams, hereby demand a trial by jury as to all issues so triable.

Date: December 29, 2014

                                      Respectfully submitted,

By:    */s/ Dhamian A. Blue*
        Dhamian A. Blue
        Daniel T. Blue, Jr.
        Attorneys for Plaintiffs
        BLUE STEPHENS & FELLERS LLP
        205 Fayetteville Street, Suite 300
        Raleigh, North Carolina 27601
        Telephone: (919) 833-1931
        Fax: (919) 833-8009
        E-mail:dab@bluestephens.com
        State Bar No. 31405 (DAB)
        State Bar No. 5510 (DTB)

        Stenise Rolle Sanders
        Taniya Windley
        Attorneys for Plaintiffs
        THE WM LAW GROUP, LLC
        4400 Stamp Road, Suite 207
        Temple Hills, Maryland 20748
        Telephone: (301) 909-0394
        Fax: (301) 909-0397
        E-mail:srsanders@wmlawgrp.com
        *Motions to Admit pro hac vice*
        *forthcoming*